FRANK L. NEWBURGER, JR., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 18790.   Promulgated August 22, 1949.

*Fred L. Rosenbloom, Esq.*, and *Thomas P. Glassmoyer, Esq.*, for
the petitioner.

*Brooks Fullerton, Esq.*, for the respondent.

236

OPINION.

Murdock, *Judge*: The petitioner contends that the payments to the New York partners were ordinary and necessary expenses paid and incurred during the taxable years in carrying on the business of Newburger & Hano and, as such, are deductible under section 23 (a) (1) (A) of the Internal Revenue Code. His argument is that they were ordinary and necessary expenses because they were paid to accelerate the dissolution of Newburger, Loeb & Co. seven months rather than to acquire any capital asset. While it is not too clear just what their purpose was, nevertheless, the evidence fails to show that these payments were current operating expenses paid or incurred merely in producing current income, but shows, on the contrary, that they are more proximately related to and were paid to acquire assets which were expected to produce income for Newburger & Hano over a longer, more permanent period. Cf. *Crowley* v. *Commissioner*, 89 Fed. (2d)

715; *Simmons Co.* v. *Commissioner,* 33 Fed. (2d) 75; certiorari denied, 280 U. S. 588; *Williams* v. *Burnet,* 59 Fed. (2d) 357; *Burt L. Davis,* 26 B. T. A. 218.

The agreement of May 20, 1942, accelerated the dissolution of the partnership seven months, as the petitioner wanted it, but the evidence does not show that any definite or approximate part or, indeed, any part of the payments was actually paid and received for the purpose of shortening the life of the existing partnership. The primary concern of the New York partners was not to obtain compensation for possible loss of profits during the last seven months of 1942. The first five months had produced a loss. There is no evidence of prospective profits for the last seven months. The payments agreed upon were out of all proportion to any profits which might have been anticipated for that period. A further loss was in prospect and both sides had reason to expect it. Business was bad. It is unreasonable that one should be paid or expect payment for the chance to avoid an anticipated loss. Breach of the contract would not have resulted in any apparent damages for loss of 1942 profits. The contention becomes even more unreasonable when it appears that the Content, Hano & Co. partners, previously uninvolved, were to share in making the payments. The firm of Newburger & Hano, for which the payments are claimed as ordinary and necessary expenses of conducting its business during each year, was to have the going business of the Philadelphia offices indefinitely. It was acquiring valuable property which would benefit it beyond the taxable years. Also, the lump sum asked and the actual amount paid were both in excess of the gross commissions of the Philadelphia offices for the first five months of 1942, the payments were based upon gross commissions and interest rather than upon actual profits, and they were based upon gross of a period of two years and seven months rather than a share of the Philadelphia offices' profit for the last seven months of 1942. A finding that all or some part of the payments was for foreshortening the partnership period is not warranted by the evidence.

Furthermore, the evidence indicates that the payments were demanded for a different reason. The Philadelphia partners would not have been entitled to more than their capital upon termination of the partnership. The New York partners, having interests of more than 62 per cent in the profits, would have had the right to continue the business without the capital and services of the Philadelphia partners. The Philadelphia offices did a larger portion of the total business than the percentage of capital or profit sharing represented by the Philadelphia partners. The New York partners were fully aware of all aspects of the situation. They knew the importance of the Philadelphia partners to the Philadelphia business. They did not want to

lose the Philadelphia partners or the Philadelphia business, but they drove the best bargain they could in disposing of their interests in the going business of the Philadelphia offices. They regarded all of the payments as consideration for those interests and reported them in that way. The payments were not deductible by Newburger & Hano under section 23 (a) (1) (A).

The petitioner makes an alternative contention in his brief that the payments were for the agreement of the New York partners not to compete in Philadelphia, Atlantic City, and Lebanon until after December 31, 1944, and should be deducted as paid, since the period of noncompetition was running concurrently. That contention is not suggested in the pleadings and is not supported by the evidence. An agreement by the New York partners not to compete was incorporated in the contract of May 20, 1942, but there is inadequate indication of its importance and that it was the paramount consideration for the cash payments. There were reciprocal agreements not to compete and a fair inference is that each was the consideration for the other.

The petitioner and his associates acquired a going business to which they were not theretofore entitled. The evidence does not show error on the part of the Commissioner. Cf. *Home Trust Co.* v. *Commissioner*, 65 Fed. (2d) 532; *Newark Milk & Cream Co.* v. *Commissioner*, 34 Fed. (2d) 854.

*Decision will be entered for the respondent.*